No. 33,099

AUGUST SCHMITT, *Appellant,* v. ALBERT J. SCHEPP, as Administrator
of the Estate of J. L. SCHEPP, deceased, *Appellee.*

(62 P. 2d 842)

Opinion
filed December 12, 1936.

*C. E. Carroll* and *A. E. Carroll,* both of Alma, for the appellant.

*Hal E. Harlan* and *A. M. Johnston,* both of Manhattan, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is from the ruling of the
trial court in sustaining a demurrer to the evidence of plaintiff.

We have no pleadings in the case because it originated in the pro-
bate court and was appealed therefrom to the district court. In the
probate court the plaintiff filed a claim against the estate of one
J. L. Schepp for the unpaid balance of a promissory note signed by
the deceased, and when the probate court disallowed the claim,
plaintiff appealed to the district court. The case was tried in the
district court and possibly also in the probate court, on the theory
of its being a composition case with a secret preference with one
of the creditors of the debtor, which, if established, would entitle
the plaintiff to recover the unpaid balance of the note. The court,
after hearing the evidence of the plaintiff, held that he had not
established the necessary elements of composition, and incidentally
added that what had been proved was what amounted in law to
accord and satisfaction.

Apparently on account of this incidental mention of accord and
satisfaction, much consideration is given in the briefs of both parties

to that legal proposition and the distinctions between it and composition. However, we are not concerned as to anything here except whether or not the plaintiff by the evidence introduced established the necessary elements of composition. If he failed in any of the three particulars constituting composition, the demurrer to his evidence was properly sustained.

The evidence tends to show that the deceased in the early part of the year 1934 held several conferences with his creditors for the purpose of reaching an agreement with them that they would accept their pro-rata share of the proceeds of the Rose pasture in full satisfaction of his indebtedness to them. Later the pasture was sold and the net proceeds thereof, amounting to $8,605.26, were left at a bank for pro-rata distribution among all the creditors, which amounted to 56 percent of the total indebtedness. The plaintiff, after learning this money was at the bank for pro-rata distribution, went to the bank and received $3,041.35 and surrendered to the bank for the debtor his note for $5,000 with interest.

The evidence also shows that another creditor accepted his proportionate share of the Rose pasture money with the private understanding with the debtor that if he would do so the debtor would give him a note for the balance due him, which he later did. Another creditor refused to accept the 56 percent and brought suit against the debtor for the whole amount, but after the death of the debtor in August of that year the claim was adjusted for the 56 percent and $68.47 additional.

The trial court, in its opinion sustaining the demurrer to the evidence, did not think it necessary to go into the matter of the secret preference and excess paid these two creditors, but based its ruling upon the failure of the evidence to show the necessary agreements for composition, using the following language:

"To bring this under the doctrine and theory of composition one of the conditions precedent and necessary elements is that there be a complete agreement, not only as between the creditors and the debtor, but also as between or among the creditors themselves. Mr. Schmitt, by his own testimony, negatives that; therefore, I don't see how it could be a composition with creditors."

The appellant urges this conclusion as contrary to the evidence of the plaintiff, directing our attention to the following testimony of the plaintiff:

"'At both meetings Schepp offered to turn over the Rose pasture if creditors would take it in full satisfaction of their claims'; there was no un-

certainty about Schepp's proposition; he knew what the proposition was; he heard of the proposed sale to MacFarland.

"Q. You heard from some source these creditors that were going to accept or wanted to settle on this basis would have to leave their notes at the First National Bank in Alma? A. Yes.

"Q. And that was stated at the meeting by Schepp? A. Yes.

"Q. And you took your note to the bank for that purpose, didn't you? A. I did.

"Q. Well you say you were not a party to the agreement? A. Yes, I think I was a party to the agreement, I was present."

Appellant cites authorities in support of the well-known rule that evidence must be considered in its most favorable light against demurrer, and that all evidence tending to prove a party's contention must be given full credence, but that does not mean that the other statements and explanations of such favorable answers given must be wholly ignored. Besides the favorable answer especially relied upon is not a statement of any fact or of things done or said, but is more nearly like an opinion and giving a reason therefor—"Yes, I think I was a party to the agreement, I was present."

The following are some answers and statements made by the plaintiff in the same examination as that from which the above is quoted. Plaintiff stated that he, at the last meeting of the creditors and the debtor, offered the debtor $23 per acre for a part of the Rose pasture, and the debtor refused to take it because the pasture must not be split up. Then the following questions and answers appear in the record:

"Q. When he said he wasn't going to do that, then what did you do? A. When I seen I wasn't going to get it, I walked out.

"Q. Did you agree to the sale of the pasture to MacFarland? A. No.

"Q. Did you ever agree to take whatever percentage this pasture brought in full settlement of your note with Mr. Schepp or anyone else? A. I didn't; that is the reason I offered more for the land than it brought."

"Q. You didn't agree with these other creditors then? A. Not in the way it was going to be settled.

"Q. Why didn't you? A. Well, we were too big a losers."

"Q. And it is your contention you never agreed with the other creditors you would accept your share of this pasture percentage? A. I left; I seen the way it was going to be handled, and I walked out.

"Q. Later on, you decided you were going to get your share out of that pasture? A. Yes, some share."

We agree with the trial court that the plaintiff by his own testi-

mony negatives the necessary elements of complete agreements to constitute composition, which is defined in 12 C. J. 252 as follows:

"A composition is a new agreement and effects a novation of the original claim. It is not only an agreement between the debtor and the creditors who enter into it, but also an agreement of those creditors among themselves, each with the others. Each creditor, however, acts for himself, rather than for all the creditors."

In 5 R. C. L. 868 it is said:

"A composition with creditors is defined as an agreement between an insolvent or embarrassed debtor and his creditors, whereby the creditors in consideration of an immediate payment agree to accept a dividend less than the whole amount of their claims, to be distributed pro rata, in discharge and satisfaction of the whole debt. . . . a composition is an agreement not only between the creditors and the debtor but also between the creditors themselves that each shall receive the sum or the security which the deed of composition stipulates to be paid and given and nothing more."

On page 871 it is further said:

". . . that a secret agreement, which induces a creditor to agree to a composition by the promise of a preference, or of some undue advantage, over the other creditors, is utterly repugnant to the composition agreement. . . ."

It was necessary for the plaintiff in order to recover in this action on the theory of composition to establish these three elements: (1) an agreement between himself and other creditors with the debtor to accept a pro-rata share in full satisfaction of the entire indebtedness; (2) an agreement between creditors, or at least the plaintiff and some of the other creditors, to accept such as a complete settlement of their claims; and (3) that there was a secret preference given by the debtor to one or more of the creditors. The evidence did not establish either of the first two agreements, and the demurrer was properly sustained.

The judgment is affirmed.